UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

William L. Lynch,                    :
        Plaintiff,                   :
                                     :
    v.                               :      File No. 1:06-CV-71
                                     :
John E. Potter,                      :
Postmaster General of               :
the United States,                   :
        Defendant.                   :

OPINION AND ORDER
(Paper 7)

*Pro se* plaintiff William Lynch, a mail handler for the

United States Postal Service, brings this action claiming that

he has been subjected to discrimination, retaliation, and a

hostile environment at his place of employment.  Pending

before the Court is the government's motion for partial

dismissal (Paper 7), in which the government contends: (1)

that Lynch has failed to adequately plead a disability, (2)

that Lynch has not alleged an adverse employment action, and

(3) that Lynch's claims based upon events prior to May 28,

2005 are time barred.  The motion for partial dismissal is

unopposed and, for the reasons set forth below, is GRANTED.

Factual Background

For the purposes of the current motion, the facts alleged

in the complaint will be accepted as true.  Lynch is employed

as a mail handler at the U.S. Postal Service's Mail Processing

and Distribution Center in White River Junction, Vermont.  He

claims that his supervisors have discriminated against him by

ignoring his claims of sexual harassment and hostile work environment, while responding to similar claims made by women. Lynch attributes this disparate treatment not only to his gender, but also to his status as a handicapped person, his religion, and to retaliation based upon his prior activity before the Equal Employment Opportunity Commission.

The complaint cites two specific incidents in which Lynch allegedly suffered discrimination. In the first, a female Postal Service employee tried to assault him during a meeting with other Postal Service personnel and a union official. The employee also used "disgusting derogatory language" toward him and others before leaving the meeting prematurely. Lynch claims that no disciplinary action was taken as a result of the incident, and that "[a]ny man exhibiting this behavior would face immediate removal pending discipline or dismissal."

In the second incident, a female co-worker intentionally assaulted Lynch with postal containers. A meeting was held, presumably with supervisors, to address the co-worker's actions. Instead of focusing on the co-worker and "the ongoing violent situation," however, the discussion "maligned and degraded" Lynch's job performance. Lynch summarizes his claims as follows:

> During this whole time I have been harassed, degraded, humiliated and forced to work in fear for my personal safety and welfare as well as the future of my job with the Postal Service due to the

2

collusion of management to put myself to blame for
this situation, because it's the easy way out.

Since the alleged events, Lynch has moved to a different job
on a new shift and has not experienced any problems.

Lynch claims that he is a "handicapped worker," but the
complaint does not specify the nature of his handicap.  In a
previous proceeding before the EEOC, Lynch submitted an
affidavit describing himself as disabled due to "osteopenia, a
bone disease," for which he has a 45-pound lifting
restriction.  With respect to his claim of discrimination
based upon religion, Lynch has identified himself as Roman
Catholic.  (Paper 7-2 at 8, 11).  For relief in this case,
Lynch is seeking damages for lost work time resulting from
stress and "to be retired with full benefits."

### Discussion

The government's motion for partial dismissal focuses on
Lynch's claims of discrimination and on the timeliness of his
claims.  On a motion to dismiss, "a court has to consider the
legal sufficiency of the claim as stated in the complaint and
is not to weigh facts underlying the claim or the merits of
the case."  Esden v. Bank of Boston, 5 F. Supp. 2d 214, 216
(D. Vt. 1998) (citing Goldman v. Belden, 754 F.2d 1059, 1067
(2d Cir. 1985)).  Moreover, when a motion to dismiss is filed,
as in this case, pursuant to Fed. R. Civ. P. 12(b)(6), the
court must assume all well-pleaded factual allegations to be

3

true and draw reasonable inferences in the light most
favorable to the plaintiff.  See Shakur v. Selsky, 391 F.3d
106, 112 (2d Cir. 2004); Bernheim v. Litt, 79 F.3d 318, 321
(2d Cir. 1996).  Dismissal is impermissible unless "it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."
Flores v. S. Peru Copper Corp., 343 F.3d 140, 148 (2d Cir.
2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
This standard is applied with particular force where the
plaintiff is *pro se*.  Hernandez v. Coughlin, 18 F.3d 133, 136
(2d Cir.), cert. denied, 513 U.S. 836 (1994).

While Lynch's complaint provides the starting point for
the Court's evaluation of the government's motion to dismiss,
the Court may also consider documents attached to the
complaint or incorporated by reference. See Dangler v. New
York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir.
1999); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
62 F.3d 69, 72 (2d Cir. 1995).  Furthermore, a court may
consider allegations made in an EEOC charge and supporting
materials.  See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.
2001) (noting that the court would treat plaintiff's
allegations in her EEOC affidavit as an integral part of her
pleadings); see also James v. Fed. Reserve Bank of New York,
2005 WL 1889859, at *1 n.2 (E.D.N.Y. Aug. 8, 2005) (noting

4

that the court may consider EEOC charge when deciding motion to dismiss).  The Court will, therefore, consider the contents of Lynch's materials submitted to the EEOC in addition to the allegations set forth in his complaint.

I.  Disability Claim

The government first argues that Lynch cannot claim discriminatory treatment based upon a disability because his alleged handicap does qualify as a disability under the law. Lynch asserts in his complaint that he is "a handicapped worker," and attests in his affidavit to the EEOC that he suffers from a bone disease.  As a result of this disease, he has a lifting limitation of 45 pounds, "recently upped" from 25 pounds, and a handicapped parking certification.  Lynch also claims in his EEOC filings that his limitations prevent him from "doing many postal jobs," that he is unable to get down on the ground to do car repairs, and that he does not take part in sports such as skiing.  (Paper 7-2 at 11).

In order for Lynch to recover for discrimination based upon a disability, he must allege that he is an individual with a disability as defined by federal law.  Because Lynch is a federal employee, his case is governed by Section 501 of the Rehabilitation Act.  29 U.S.C. § 791.  The Rehabilitation Act defines a "disabled individual" as one who "(i) has a physical or mental impairment which substantially limits one or more of

such person's major life activities, (ii) has a record of such

an impairment, or (iii) is regarded as having such an

impairment."  29 U.S.C. § 705(20)(B).  The government contends

that because Lynch is alleging an actual "handicap," his

disability should be analyzed under the first part of this

definition.

When determining whether an individual has a disability

for purposes of the Rehabilitation Act, the Second Circuit has

adopted the three-step approach taken by the Supreme Court in

Bragdon v. Abbott, 524 U.S. 624, (1998).  See Colwell v.

Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).

Under the Bragdon-Colwell analysis, the plaintiff must first

show that he suffers from a physical or mental impairment.

See Colwell, 158 F.3d at 641 (citing Bragdon, 524 U.S. at

631).  Second, the plaintiff must identify the activity

claimed to be impaired and establish that it constitutes a

"major life activity."  Third, the plaintiff must show that

his impairment "substantially limits" the major life activity

previously identified.  Id.

Major life activities include "functions such as caring

for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working."  28

C.F.R. § 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii); 24 C.F.R. §

100.201(b).  The function of caring for one's self encompasses

normal activities of daily living, including feeding oneself, driving, grooming, and cleaning house.  Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir. 1998).  A major life activity must be "of central importance to daily life." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002).

In order to succeed on his claim of disability-based discrimination, Lynch must show that his limitations are "substantial, not amounting to only a mere difference in conditions, manner or duration" as compared to the average person.  Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69, 80 (2d Cir. 2000).  In cases involving lifting restrictions, courts have generally concluded that a restriction like the 45-pound limit in this case is not severe as compared with the average person.  See, e.g., Sherrod v. Am. Airlines, 132 F.3d 1112, 1120 (5th Cir. 1998) (restriction to lifting forty-five pounds occasionally and twenty pounds frequently does not establish substantial limitation in ability to lift, but merely indicates a limitation in "heavy lifting").  Even if the Court takes into account Lynch's statement that his restriction was "recently upped" from 25 pounds, his bone condition does not satisfy the requirements for a disability.  See Colwell, 158 F.3d at 644 (evidence that plaintiff could lift only light objects of ten to twenty pounds infrequently was not sufficient to establish that

plaintiff suffered a substantial limitation on his ability to lift); Helfter v. United Parcel Serv., 115 F.3d 613, 617 (8th Cir. 1997) (evidence that plaintiff could not lift more than ten pounds frequently or twenty pounds occasionally did not raise genuine issue of material fact on whether her impairments imposed substantial limitations on any major life activity); Thompson v. Holy Family Hosp., 121 F.3d 537, 539-40 (9th Cir. 1997) (inability to lift more than twenty-five pounds frequently, more than fifty pounds twice a day, or more than one-hundred pounds once a day does not constitute a substantial limitation on any major life activity); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (twenty-five pound lifting restriction did not significantly restrict major life activities).

An inability to ski or work on cars, as claimed in Lynch's EEOC affidavit, also falls short of the legal definition of "disability."  See Colwell, 158 F.3d at 643. Furthermore, the fact that Lynch is physically unqualified for certain postal jobs is insufficient.  To prove that an impairment substantially limits the major life activity of working, a plaintiff must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and

abilities."  29 C.F.R. § 1630.2(j)(3)(I).  As the Supreme
Court has explained, "[i]f jobs utilizing an individual's
skills . . . are available, one is not precluded from a
substantial class of jobs.  Similarly, if a host of different
types of jobs are available, one is not precluded from a broad
range of jobs."  Sutton v. United Air Lines, Inc., 527 U.S.
478-79 (1999).

    Nowhere in his complaint does Lynch claim that he is
unable to perform a broad range of jobs.  Although Lynch
claims in his EEOC filing that he is prevented from doing
"many postal jobs," the nature of these jobs, and/or the
availability of work outside of these specific jobs, is not
discussed.  Therefore, based upon the bare allegations
presented in the complaint and Lynch's EEOC affidavit, he has
failed to allege a disability as defined under 29 U.S.C. §
705(20)(B)(i).[1]

II.  Adverse Employment Action

    The government next argues that, apart from his claim of
hostile work environment, Lynch's discrimination claim is

_____

    [1]  As discussed below, Lynch may have additional facts
about his disease, and the effects of his disease, that would
reinforce his claim to a disability.  He may also be able to
allege facts in support of a claim under subsections (ii) or
(iii) of § 705(20)(B).  Therefore, although the Court is
dismissing Lynch's disability claim, Lynch may move to amend
his complaint to add facts that he, in good faith, believes
meet the legal requirements for a disability.

generally barred for failure to show any adverse employment action.[2]  Lynch's basic claim is that he has been treated less favorably than his female co-workers, and that this treatment has been motivated by various forms of discrimination.  The complaint highlights episodes in which management failed to discipline female workers, but provides little information about management actions against Lynch himself.

In order to show a *prima facie* case for disparate treatment, a plaintiff must show that he suffered an adverse employment action, and that the adverse action occurred under conditions giving rise to an inference of discrimination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  An employment action is adverse if it causes an employee to endure a "materially adverse change" in terms and conditions of his employment.  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"

---

[2]  The government makes clear that it is not challenging either Lynch's retaliation claim or his hostile work environment claim on the basis of insufficient injury.  (Paper 71 at 10 n.5).

Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)).  As the Supreme Court recently pronounced, the focus of this analysis is adversity, since "it is important to separate significant from trivial harms."  Burlington N. & Santa Fe Ry. Co. v. White, 125 S. Ct. 2405, 2415 (2006).

Aside from his claim of a hostile work environment, Lynch does not cite any adverse employment action to support a disparate treatment claim.  The only action taken against him directly, as alleged in the complaint, was the criticism of his job performance.[3]  "Under the law of this Circuit, a negative employment evaluation, standing alone, cannot constitute an adverse employment action."  Miller v. New York City Health & Hosp. Corp., 2004 WL 1907310, at *6 (S.D.N.Y. Aug. 25, 2004); see also Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 443-44 (2d Cir. 1999); Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001).

The Court finds no support for the assertion that favorable treatment of other employees necessarily translates into adverse treatment of the plaintiff.  Furthermore, it is clear that disparate treatment itself cannot constitute

---

[3] In his EEOC affidavit, Lynch alleges that on one occasion he was placed on administrative leave pending discipline, but does not claim that he was actually disciplined.  (Paper 7-2 at 9).

adverse employment action unless that treatment satisfies the definitions of adverse action set forth above.  Because Lynch has not claimed any adverse employment action sufficient to support a claim of disparate treatment, his discrimination claim based upon disparate treatment is generally barred.

III.   <u>Time Barred Claims</u>

The government's final argument is that any claims relating to events prior to May 28, 2005, aside from Lynch's hostile work environment claims, are time barred. EEOC regulations require an employee suing the federal government under the Rehabilitation Act to exhaust certain administrative remedies before initiating a suit in the district court. First, an aggrieved employee must seek EEO counseling within 45 days of the allegedly discriminatory act.  <u>See</u> 29 C.F.R. § 1614.105(a)(1); <u>Dillard v. Runyon</u>, 928 F. Supp. 1316, 1323 (S.D.N.Y. 1996) ("Exhaustion of administrative remedies requires that a federal employee . . . consult a counselor at her agency's EEO office within 45 days of the alleged discriminatory act.").  Failure to act in a timely manner results in the employee's claims being time barred, subject to certain equitable considerations.  <u>See</u>, <u>e.g.</u>, <u>Fridia v. Henderson</u>, 2000 WL 1772779 at *9 (S.D.N.Y. Nov. 30, 2000) ("Failure to bring a claim within the 45 day time period

usually precludes the claimant from pursuing a discrimination claim in federal court.") (citations omitted).

In this case, Lynch made his initial contact with the EEO office on July 11, 2005. (Paper 7-3 at 1). In his EEOC claim, he reportedly cited conduct dating back to May 5, 2000, alleging "an ongoing pattern of discrimination" since that time. (Paper 7-2 at 2). The government contends that counting back 45 days from July 11, 2005, any claims prior to May 28, 2005 are time barred.

Construed liberally, Lynch's EEOC claim alleges a continuing violation of his rights. Prior to 2002, the continuing violation doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a "practice or policy" of discrimination. See Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001). The scope of the continuing violation doctrine was substantially restricted, however, by the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Supreme Court unanimously held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 114. The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to hire" as

examples of conduct that constituted a "discrete discriminatory act." 536 U.S. at 114.[4]

The Second Circuit has not addressed what, if anything, of the continuing violation doctrine survives the Supreme Court's decision in <u>Morgan</u>. <u>See</u> <u>Bailey v. Colgate-Palmolive Co.</u>, 2003 WL 21108325, at *8 (S.D.N.Y. May 14, 2003). Nonetheless, even if some portion of the doctrine has survived the <u>Morgan</u> holding, the specific allegations set forth in Lynch's complaint can only be described as discrete. The complaint offers two examples of unlawful conduct, one in which Lynch was threatened and cursed at by a female employee, and another in which he was assaulted and later criticized for his work performance. The first hardly constitutes an adverse act, since no action was taken against Lynch himself. The second is similar to the first, with the addition of Lynch's job performance being critiqued. It is plain, under the <u>Morgan</u> definition, that a decision by a supervisor to criticize an employee's work performance is a discrete act that begins the 45-day clock running. 536 U.S. at 114.

---

[4] The <u>Morgan</u> Court noted that the continuing violation doctrine could still apply to a hostile work environment claim since such a claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" 536 U.S. at 117. The government has conceded that Lynch's hostile environment claim may be supported by events that occurred prior to 2005.

In his EEOC claim, Lynch claims that female workers have been treated favorably in several respects, including being allowed long work breaks and, as alleged in the complaint, allowed to physically and verbally abuse co-workers with no discipline resulting.  Although Lynch claims that this tolerance of poor work behavior has been "ongoing and systematic," he does not suggest that it is anything more than a series of discrete, yet arguably related, incidents.

Prior to <u>Morgan</u>, the Second Circuit stated that "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests.  However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted).  Because Lynch's claims do not appear to allege any sort of policy or formal mechanism for effecting discrimination, they would not satisfy the continuing violation exception under this definition.

The Second Circuit subsequently explained that the doctrine applied "where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may

reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359, 362 (2d Cir. 2001).  However, "acts so 'isolated in time . . . from each other . . . [or] from the timely allegations[ ] as to break the asserted continuum of discrimination' will not suffice."  <u>Id.</u> at 359 (quoting <u>Quinn v. Green Tree Credit Corp.,</u> 159 F.3d 759, 766 (2d Cir. 1998)).

Here, Lynch claims systematic discrimination over a period of five years, but has not provided either the EEOC or this Court with any detail as to the frequency of these events or the span of time between each event.  Furthermore, as discussed previously, it is not clear that Lynch is making claims that pertain to adverse actions against *him.*  Instead, he cites failures to discipline others, and claims that he would not be treated the same way.  While this sort of claim may contribute to a hostile work environment claim, it does not demonstrate continuing violations for purposes of either discrimination or retaliation.  Therefore, based upon the limited allegations in Lynch's filings, any claims of discrimination or retaliation relating to events prior to May 28, 2005 are time barred.[5]

---

[5]   Time-barred conduct may still be offered as evidence of intent to support timely claims.  <u>Morgan</u>, 536 U.S. at 102 ("[T]he statute [does not] bar an employee from using the prior acts as background evidence to support a timely claim."); see generally Fed. R. Evid. 404(b).

IV.   <u>Dismissal Without Prejudice</u>

While Lynch's claims, to the extent discussed above, are
ripe for dismissal, the Second Circuit has held that when a
court dismisses a *pro se* action on the pleadings, the
plaintiff should be given an opportunity to amend his
complaint to state a claim when the complaint gives "any
indication" that a valid claim may be stated.  <u>See</u> <u>Frasier v.</u>
<u>Gen. Elec. Co.</u>, 930 F.2d 1004, 1007 (2d Cir. 1991).  In a
recent decision, the Second Circuit reiterated the principle
that "'[i]mplicit in the right of self-representation is an
obligation on the part of the court to make reasonable
allowances to protect *pro se* litigants from inadvertent
forfeiture of important rights because of their lack of legal
training.'"  <u>Triestman v. Fed. Bureau of Prisons</u>, 2006 WL
3499975, at *3 (2d. Cir. Dec. 5, 2006) (quoting <u>Traguth v.</u>
<u>Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983)).

Here, the government has moved for only a partial
dismissal, meaning that portions of the case remain.  Since
the case is not being dismissed in its entirety, the Court
will not automatically grant Lynch leave to amend his
complaint.  Indeed, in the usual case, leave to amend is
freely granted, but may be denied if the proposed amendment is
futile.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).
Nonetheless, the Court acknowledges that Lynch's claims of

17

disability, discrimination and continuing violations, if supported by additional facts, may suggest at least a possibility of validity.  Therefore, the claims that are the subject of the government's motion for partial dismissal are DISMISSED without prejudice, such that Lynch may move the Court for leave to amend his claims.  Lynch's motion shall be submitted within the next 30 days so that the Court can issue a ruling and the case may, if appropriate, proceed to discovery.

Conclusion

For the reasons set forth above, the government's motion for partial dismissal (Paper 7) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 27th day of December, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge